The defendant was charged in two separate indictments with robbery in the first degree. Alabama Code 1975, Section13A-8-41 (Amended 1977). The cases were consolidated for trial. A jury returned a verdict of guilty in both cases. Sentence was 15 years' imprisonment in each case.
 I
The defendant contends that there was no probable cause to stop the automobile he was driving and, also, that the subsequent search was unconstitutional.
On October 20, 1980, Birmingham Police Officer J.P. Martin was on special assignment patrolling the western area of Birmingham, particularly an area near West End High School and Robert E. Lee grammar school. He was in civilian or plain clothes and was driving an unmarked car. At approximately 2:30 that afternoon he observed three black males in a 1976 red Ford. He became suspicious because the two passengers "were constantly looking, just looking hard one way and then the other." The passenger in the back seat wore a white hat. Martin followed this car for about two blocks before "losing it" when it made a quick u-turn in the parking lot of a convenience store.
Three to six minutes later, Officer Martin spotted the same red Ford which he was *Page 1248 
able to identify by the license tag number. The driver was the only occupant he could see in the car. The Ford was "almost stopped, had its emergency flasher on, going very, very slow."
Martin then observed two black male subjects run and get in the Ford. One of these suspects had on a white hat.
 "I saw two subjects running up the street. When they approached the intersection the car moved up to the intersection and stopped. The suspects at that time got in the car. They each had a black case, one was small and one was large."
* * * * * *
 "It looked like they (the two running suspects and the red Ford) got there (to the intersection) about the same time, the suspect that was driving the vehicle appeared to be looking for them. When he saw them they came to the intersection approximately at the same time."
Officer Martin's testimony clearly indicates that the red Ford pulled up to the intersection and stopped and left when the two people were in the car. After these two men got into the Ford, the car's flashers were turned off and the Ford proceeded on.
Officer Martin stopped the red Ford and "asked the person in the back seat what was the problem, why were they running?"
 "The person from the back seat said that he had been to get his nephew's band instrument to take home for him, and that while they were down there another male had pulled a gun on him and they were running to get away from him."
Martin could see the cases through the car window. He asked and was told that the cases contained band instruments.
After the Ford and its three occupants had been detained for "two or three minutes", Officer Martin received a radio dispatch that "there had been a robbery from the person involving two band instruments." Upon receipt of this information, Officer Martin arrested the three occupants of the vehicle: "At that time we made sure that there were two band instruments. We arrested the suspects, read them their rights, and at that time they were in custody." Officer Martin testified that the cases were not opened or removed from the car until after the suspects were arrested.
Officer Clifford Prosser conducted an inventory search of the red Ford at the scene of the arrest according to policy and procedure before the Ford was "pulled in". Officer Prosser stated that his "first look at the car was to make sure there were no dangerous weapons in the front of the car in the passenger's compartment." He found the knife used in the robberies under the rubber floor mat in the right front portion of the car.
The trial judge found that the search was reasonable and based on probable cause.
The initial stop of the red Ford was justified. The facts available to Officer Martin at the moment he stopped the automobile would warrant in a man of reasonable caution the belief that the action taken was appropriate. Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under Terry, a stop is permissible "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Terry,392 U.S. at 30, 88 S.Ct. at 1884. "An investigatory detention may be based upon circumstances falling short of probable cause for arrest." Bagony v. City of Birmingham, 371 So.2d 80, 81
(Ala.Cr.App. 1979). "The strength of the information needed for an `investigatory detention' is much less than that required for an arrest and search." Thatch v. State, 397 So.2d 246, 250
(Ala.Cr.App.), cert. denied, Ex parte Thatch, 397 So.2d 253
(1981). See also Minnifield v. State, 390 So.2d 1146
(Ala.Cr.App.), cert. denied, Ex parte Minnifield,390 So.2d 1154 (Ala. 1980); Butler v. State, 380 So.2d 381 (Ala.Cr.App. 1980).
After observing the suspicious conduct of the occupants of the automobile, the manner and speed in which the automobile was being driven, the sudden disappearance of the two passengers as well as their speeding return, and the black cases, Officer Martin had ample and sufficient *Page 1249 
grounds to make an investigatory stop. Luker v. State,358 So.2d 504 (Ala.Cr.App. 1978).
The arrests of the three occupants of the Ford were lawful because they were founded on probable cause. The facts supporting this finding of probable cause to arrest are the conduct of the suspects, the radio report of a robbery of band instruments, the fact that cases were observed in the automobile, the admission that these cases contained band instruments, and the suspects' account of how they came into possession of these instruments.
The search of the automobile after the arrest of the suspects was lawful. "(W)hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton,453 U.S. 454, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). This rule applies even though the suspects have been removed from the automobile and restrained by other officers. Belton, supra.
The search in this case is also justified as an "inventory search". South Dakota v. Opperman, 424 U.S. 364, 96 S.Ct. 3092,49 L.Ed.2d 1000 (1976). Because the facts supporting the justification for the initial stop, the arrest, and the search are so obvious, these issues do not warrant further discussion or citation of authority.
 II
The State sustained its burden of proving a prima facie case of robbery in the first degree against the defendant.
In Thomas v. State, 363 So.2d 1020, 1023 (Ala.Cr.App. 1978), this Court held that "(t)he mere fact that a defendant is sitting in the driver's seat of an automobile into which a robber enters immediately following the robbery affords no legal inference that the defendant is the `get-away driver or a participant in the robbery.'" However, in this case there are numerous facts and inferences which support a finding of the defendant's guilty participation. The jury could reasonably infer that the defendant and his companions were together bothbefore and after the robbery. Kimmons v. State, 343 So.2d 542
(Ala.Cr.App. 1977). The facts in this case authorize inferences that the defendant was "looking" for his two accomplices, that plans and arrangements to pick them up had been made, and that the defendant was an actual participant immediately before and after the robbery. "Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court." Dolvin v. State, 391 So.2d 133, 138 (Ala. 1980).
Under the principles enunciated in Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), and Kimmons, supra, and approved inDolvin, supra, the questions of the sufficiency and weight of the evidence were properly submitted to the jury for their determination.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.