Steven Larry Ringer was indicted for possession of marijuana in violation of § 20-2-70, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." The appellant was sentenced to 15 years' imprisonment and fined $25,000.
At approximately 6:00 on the evening of March 15, 1984, Officers Thomas Green and Robert Tuten of the Huntsville, Alabama Police Department, were driving west on Sparkman Drive in an unmarked car. They observed the appellant driving in the opposite direction in a black Nissan pickup truck. The officers had in their possession an arrest warrant on the appellant for possession of marijuana dated February 29, 1984. The officers turned their vehicle around and pursued the appellant. The officers called for uniformed assistance and the appellant was stopped with their aid on Max Luther Drive. The appellant identified himself and after the warrant was served on him, he was placed under arrest. *Page 648 
At this point, Officer Danny Shumate impounded the truck which the appellant was driving, pursuant to guidelines established by the Huntsville Police Department. Green and Tuten then proceeded to inventory the truck according to the standard procedures of the police department. During the course of this inventory, Tuten found a paper bag behind the seat. A plastic bag was observed protruding from the paper bag. Inside the paper bag, Tuten found three plastic bags, each containing green plant material.
Tuten took this evidence into his possession and turned it over to Martha Odom, a chemist with the Department of Forensic Sciences. Odom analyzed the plant material in the three bags and determined that it was marijuana. The total weight of the marijuana was 1.4 pounds.
Tuten and Green testified that they had been by the appellant's house several times between the time of the issuance of the arrest warrant and his arrest but they never had an opportunity to serve the warrant until the night of March 15, 1984. Both officers stated that, in their opinion, the street value of the marijuana was $1500.
The defense then put on Officer Steven Turner. Turner testified that on October 9, 1983, he stopped the appellant for slashing auto tires. The appellant was charged with DUI, resisting arrest and attempting to flee and elude the officer. A search of the appellant's vehicle was made. The search revealed the presence of one handrolled marijuana cigarette. Although the appellant was not arrested for possession of marijuana at that time, this incident was the basis for the arrest warrant served on the appellant by Green and Tuten.
William Manlove testified that the truck which the appellant was driving on the night he was arrested belonged to him. The appellant borrowed the truck on numerous occasions. When Manlove was asked about the marijuana found in his truck, he invoked his Fifth Amendment right against self-incrimination.
The appellant testified that he did not know anything about the marijuana found in the truck when he was arrested. At the time of his arrest, the appellant had $2758 in cash on his person.
 I
The appellant contends that the search of the vehicle which he was driving cannot be justified by the inventory exception to the warrant requirement, which was recognized by the United States Supreme Court in South Dakota v. Opperman, 428 U.S. 364,96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Lippold v. State,365 So.2d 1015 (Ala.Crim.App. 1978), cert. denied, 365 So.2d 1022
(Ala. 1979). In Opperman, supra, the United States Supreme Court approved routine inventory searches of lawfully impounded vehicles.
Therefore, to justify an inventory search of a vehicle, that vehicle must be properly impounded. "An automobile may be impounded when it is reasonable under the circumstances or there is no reasonable alternative (Jones v. State,407 So.2d 870 (Ala.Crim.App. 1981), or under authority of statute."Morton v. State, 452 So.2d 1361, 1364 (Ala.Crim.App.), cert. denied, 452 So.2d 1361 (Ala. 1984).
Section 32-5A-139 (c)(3), Code of Alabama 1975 provides:
 "Any police officer is hereby authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when: "When the person driving or in control of such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a proper magistrate without unnecessary delay."
The appellant in the case at bar was stopped on a public roadway and arrested on a felony warrant. He was then placed under custodial arrest. Thus, the vehicle which he was driving was lawfully impounded by Officer Shumate, pursuant to §32-5A-139 (c)(3). See McElroy v. State, 469 So.2d 1337
(Ala.Crim.App.), cert. denied, 469 So.2d 1337 (Ala. 1985). *Page 649 
The inventory search of this vehicle was then carried out in accordance with the standard procedures established by the Huntsville Police Department. Thus, the inventory search of the vehicle was justified in the case at bar. Sterling v. State,421 So.2d 1375 (Ala.Crim.App. 1982); Vaughn v. State,473 So.2d 661 (Ala.Crim.App. 1985); Fenn v. State, 456 So.2d 1165
(Ala.Crim.App. 1984); Thomas v. State, 415 So.2d 1246
(Ala.Crim.App. 1982).
The inventory search of the contents of the brown paper bag was not improper. The paper bag was not sealed and one of the plastic bags contained within the paper bag was protruding from it. If the bag had been sealed, the inventory of the contents of the bag may have been improper. However, such was not the case and the contents of the paper bag were properly admitted into evidence.
Further, the appellant contends that the inventory search of the vehicle was invalid because it was a subterfuge for an investigatory search rather than routine administrative inventory. We disagree.
 "The record clearly shows that appellant was under custodial arrest, prior to the search of his vehicle. The officer did not need to search for a reason to arrest appellant because appellant was already arrested. Once the appellant was arrested, the administrative caretaking function arose. The custodial arrest separated appellant from his car. The officers could either impound the car or leave it on the shoulder of a heavily traveled street where it would be subject to damage, vandalism or theft. Pursuant to police department policy, the officers . . . inventoried the car, then drove it to the vehicle pound. Such a practice has been recognized as a valid caretaking function." Opperman, supra.
Evers v. State, 576 S.W.2d 46, 50 (Tex.Crim.App. 1978).
Furthermore, although Officers Green and Tuten testified that they thought the appellant might be carrying drugs in the vehicle, ". . . the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search. UnitedStates v. Prescott, supra, 599 F.2d [103] at 106." UnitedStates v. Bosby, 675 F.2d 1174, 1179, (11th Cir. 1982).
There is no basis of error to reversal on this issue.
 II
The appellant's second contention on appeal is that the search of the vehicle cannot be justified as a search incident to a lawful arrest. It is unnecessary for this court to address this issue since we have already decided that the search was proper under the "inventory exception" to the warrant requirement. See our discussion above.
 III
During the cross-examination of the appellant the following occurred:
 "Q. You don't go to Tennessee on a regular basis and buy drugs from Dewayne Monks and haul it back to Huntsville, Alabama?
"A. No, sir.
"MR. McDANIEL: Judge, we object to that.
"MR. CULVER: We object to that, Judge.
"MR. McDANIEL: That's irrelevant and immaterial.
"THE COURT: He answered no.
"Q. You say you don't do that.
"A. No, sir.
 "MR. CULVER: That's highly prejudicial, your Honor. We ask for a mistrial.
"THE COURT: Come up to the bench, gentlemen.
 "(Whereupon, the attorneys approached the bench and the following occurred out of the hearing of the jury:)
"MR. McDANIEL: Go ahead.
 "MR. CULVER: The question was, didn't he regularly go to Dewayne Monks up in Tennessee and buy drugs and bring them back to Madison County. Very highly prejudicial. *Page 650 
 "MR. HOOPER: Of course, I get that from the police officer and informants.
"THE COURT: I'm going to overrule your motion.
 "(Whereupon, the following occurred in the hearing of the jury:)
 "THE COURT: Ladies and gentlemen, I want to instruct you about one thing, and listen carefully to what I'm saying to you. Disregard the question that was asked of the defendant and his response to it about regularly going to and from Tennessee and Huntsville, Alabama. In your deliberations in this case, that may not be discussed among you, nor may it be taken into account by you in arriving at a verdict in this case.
 "Now, if any of you have any question about what I'm telling you, let me know that right now by raising your hand.
 "All right, nobody has raised their hand, so I assume —
"All right.
"JUROR MONKS: I am not related to a Dewayne Monks.
 "THE COURT: All right, sir. Now, I appreciate that, Mr. Monks, but, now, there is no place for any frivolity in this trial.
 "This is an important point, and I want to make sure each of you understand it. I am telling you that you may not take that into account. You must disregard it and you must dismiss it from your minds.
 "Do all of you understand that? If any of you have any questions, I want you to let me know that right now by raising your hand.
 "All right, there are no hands raised so I assume you all understand what I have told you.
"Go ahead, Mr. Hooper." (R. 184-186)
Although the prosecutor's question to the appellant was highly improper, we do not feel that a reversal is mandated on this issue.
A trial judge is in the best position to determine whether the prejudicial effects of an improper question can be eradicated by instructions to the jury. His determination of this matter should be accorded great deference. Retowsky v.State, 333 So.2d 193 (Ala.Crim.App. 1976). Pickett v. State,417 So.2d 589 (Ala.Crim.App. 1982); Wysinger v. State,448 So.2d 435 (Ala.Crim.App. 1983). There is a prima facie presumption against error when a trial judge immediately instructs the jury to disregard an improper question or remark.Mallory v. State, 437 So.2d 595 (Ala.Crim.App. 1983); Kelley v.State, 405 So.2d 728 (Ala.Crim.App.), writ denied,405 So.2d 731 (Ala. 1981). In the case at bar, the trial judge thoroughly instructed the jury to disregard the prosecutor's improper question. He further took extra precautions to make sure each of the jurors understood his instructions. Retowsky, supra.
In light of the trial judge's actions and the authorities cited above, we conclude that the appellant's motion for a mistrial on this issue was properly denied.
 IV
The portion of the transcript quoted below took place during the cross-examination of the appellant:
"Q. Okay. You were answering Mr. Culver's questions about crime involving moral turpitude. I want you to think real carefully about moral turpitude. Are you saying you have not been convicted of a crime —
"A. I'm not real familiar with moral turpitude, but I figured, you know, it would be hurting somebody or doing something — you know, doing something bad or something like that.
"Q. But you're not sure?
"A. I hadn't never done anything — No, I hadn't never done anything violent or never hurt anybody or anything like that.
"Q. What about when you cut that guy's tires down here back on October the 9th at the A W. Isn't that kind of violent, when the police got you, got —
"A. I paid for what I did. There was one tire, and I paid $100 for that tire. It was my girl friend's car. That's who I went *Page 651 
down there to see, and I paid for that. I paid for that.
"Q. That's kind of violent, isn't it?
"A. I paid for what I did.
"Q. Okay. Anything else?
"A. I paid for what I did the next day. When they got me on that night, I went down there — I went down there to jail that night and went back to court the next morning and I told them — when I went to court, I told them that I was guilty of DUI and I went ahead and just pled guilty for resisting arrest and attempt to elude the police. I didn't have any charge of anything violent.
"Q. Let me ask you this. Are you sure about anything else, in response to Mr. Culver's question about anything else that you possibly have done?
"MR. McDANIEL: I object, Judge. I object.
"Q. In response to Mr. Culver's question.
"MR. McDANIEL: Judge, I object to that. That's not a specific question.
"MR. HOOPER: Cross-examination.
"MR. McDANIEL: Judge, Mr. Hooper knows the man hasn't been convicted of a crime involving moral turpitude and he's fishing for him to come up and admit something else.
"THE COURT: All right, gentlemen, come up to the bench just a second.
"(Whereupon, the attorneys approached the bench and the following occurred out of the hearing of the jury:)
"MR. HOOPER: He knows what we're getting at.
"MR. McDANIEL: Judge, Charlie knows the man hasn't been convicted of a crime involving moral turpitude.
"THE COURT: I understand, but David Culver —
"MR. McDANIEL: — asked him if he had ever been convicted of a crime involving moral turpitude.
(Whereupon, the following occurred in the hearing of the jury:)
"THE COURT: Ladies and gentlemen, if you will, go into the jury room a second. I want to talk to the lawyers in a conversational tone rather than whispering at the bench.
"(Whereupon, at 2:45 p.m., the jury left the courtroom and the following occurred out of their presence and hearing:)
"THE COURT: Now, I'm going to tell you all something. I don't know why you even opened that door, but you opened it when you asked him whether he'd ever been convicted of a crime involving moral turpitude. Then you had him define moral turpitude, so I think it's fully within the province of cross-examination for Mr. Hooper to test him on his own definition of what moral turpitude is.
"Mr. CULVER: Yes, sir, I would agree with that, but, I mean, as far as —
"THE COURT: Well, he's tying it to your question, and you opened the door.
"MR. CULVER: Your Honor, I did it for the sole and simple purpose to get it out in the open so that if he comes back and asks the question of any misdemeanor —
"THE COURT: He couldn't have asked such a question.
"MR. CULVER: I know it's —
"MR. McDANIEL: Your Honor, the Court has just stated — just said to Mr. Culver that he doesn't know why he asked about moral turpitude. Any time, as a criminal defense lawyer, of course, we're not in the presence of the jury right now, but that's going to be certainly something that you ask the defendant if he has not been convicted of a crime involving turpitude, you ask him that.
"THE COURT: Mark, you've practiced law long enough to know that Charlie Hooper never could have asked such a question.
"MR. McDANIEL: Judge, the whole thing is that Charlie Hooper knows, the State representative knows, at this point that this man has not been convicted of a crime involving moral turpitude. We knew that when we asked that question. *Page 652 
"Now, what Charlie's doing, he's going on a fishing expedition because this man doesn't know what the legal definition of a crime involving moral turpitude. He's going on a fishing expedition to try to ask him about other things that have been brought up. Now, Judge, I think that's highly prejudicial. You know, I think right now — Well, I'll ask for a mistrial right now on the grounds, your Honor —
"THE COURT: I'll overrule it because you opened the door.
"MR. McDANIEL: — on the grounds of prosecutorial misconduct at this time, your Honor, because Mr. Hooper knows the man has not been convicted of a crime involving moral turpitude, yet he's asked him about a DUI, he's asked him about tire slashing. We didn't ask him about that.
"THE COURT: You brought all of those things up —
"MR. McDANIEL: No, sir.
"THE COURT: — when you went into this October the 9th thing. You brought it up when you asked him about whether he'd been convicted of a crime involving moral turpitude. You brought it up when you put the man on the stand and asked him those question.
"MR. McDANIEL: We brought it up —
"THE COURT: Well, Mr. Hooper is entitled to reasonable latitude in his cross-examination.
"MR. McDANIEL: Okay, sir.
"THE COURT: Now, Charlie, I don't want to mess up this trial. I think, as long as you stay within the narrow confines of what Mr. Culver did on his direct examination asking him what his definition of moral turpitude was —
"MR. CULVER: No, sir. I asked him did he know what moral turpitude was, Judge.
"THE COURT: Yes, sir.
"MR. CULVER: But I didn't ask him to define it.
"MR. HOOPER: You let him define it.
"MR. CULVER: I didn't ask him to define it.
"THE COURT: Well, David, you asked the question. He is your client. You put him on the stand. You take his answer that he gave you.
"MR. CULVER: Yes, sir.
"MR. McDANIEL: Judge, what the State's getting to here, and what I expect him to get to —
"MR. HOOPER: How do you know what I'm getting to?
"MR. McDANIEL: I can read your mind, Charlie.
"MR. CULVER: Know you well enough.
"MR. McDANIEL: What he's getting to, Judge —
"THE COURT: Well, I think we've about gone far enough on that discussion, Charlie.
"MR. HOOPER: Yes, sir.
"THE COURT: And I think you recognize the danger of this.
"MR. HOOPER: I know and I'm not going to do it.
"THE COURT: And I do not want to taint this trial.
"MR. McDANIEL: Your Honor, could we have a ruling on our motion for a mistrial based on prosecutorial misconduct?
"THE COURT: I overruled your motion. I don't think Mr. Hooper has committed any misconduct. He has simply tried to conduct his cross-examination in the manner that you all allowed him to do by opening the door which should have remained closed.
"Bring the jury back in." (R. 198-203).
We do not find that a mistrial is required on this issue. The trial judge correctly stated that the prosecutor had not committed any misconduct in questioning the appellant about moral turpitude since defense counsel opened the door on this matter during his direct examination of the appellant. (R. 173). Also, the prosecutor did not pursue this matter any further, once he was instructed not to by the trial judge.Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967), Kuczenskav. State, *Page 653 378 So.2d 1182 (Ala.Crim.App. 1979), cert. denied, 378 So.2d 1186
(Ala. 1980).
As to the tire slashing incident and the DUI, defense counsel allowed the appellant to admit to this matter without objection. Therefore, he did not preserve these issues for our review. Also, defense counsel brought these matters into evidence when he examined Officer Turner.
The appellant's motion for mistrial was properly denied by trial court.
 V
The appellant asserts that the trial judge erred to reversal by allowing Officer Green to give his opinion as to the street value of the three bags of marijuana.
It is unnecessary for a witness to be an expert or a dealer in a particular article in order to testify as to that article's value if he has had the opportunity to form a correct opinion as to its value. Sales v. State, 435 So.2d 242
(Ala.Crim.App. 1983); Lankford v. State, 396 So.2d 1099
(Ala.Crim.App. 1981). Whether a witness has had an opportunity to form a correct opinion as to the value of an article is a question for the trial judge, which will not be disturbed on appeal, absent an abuse of discretion. Daniel v. State,439 So.2d 206 (Ala.Crim.App. 1983). Tice v. State, 386 So.2d 1180
(Ala.Crim.App.), writ denied, 386 So.2d 1187 (Ala. 1980).
Officer Green testified that he was working on narcotics cases at the time of the appellant's arrest and that he had been a police officer for six years at the time of the trial. Based on this testimony, the trial judge certainly could have concluded that Green had had an opportunity to form a correct opinion as to the street value of marijuana. Thus, there is no abuse of discretion in this regard. We find no error in this record.
The judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.