[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1044 
Appellant, Bobby James King, was indicted in a two-count indictment on October 21, 1985. The first count charged King with the capital offense of murder during a robbery in the first degree or an attempt thereof, in violation of §13A-5-40(a)(2), Code of Alabama 1975. The second count charged him with the capital offense of murder during sexual abuse in the first degree or an attempt thereof, in violation of §13A-5-40(a)(8). He was convicted, after a jury trial, of the lesser included offenses of murder in each count and sentenced on February 28, 1986, to ninety-nine years in the penitentiary. He appeals, raising two issues.
Appellant does not question the sufficiency of the evidence to support his conviction, and it would serve no useful purpose to recite the evidence in detail in this opinion; however, we will set out facts where we deem it necessary for a better understanding of the issues raised. Although the evidence of guilt was largely circumstantial, there was ample legal evidence presented by the State from which the jury by fair inference could find appellant guilty. There was sufficient evidence from which the jury could have excluded every reasonable hypothesis except that of guilt beyond a reasonable doubt. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
On August 28, 1985, Judy Ann McArthur, the night clerk at the Circle K convenience store in the city of Mobile, was brutally murdered in the store by blows to her head and face. Approximately $94 was missing from the cash register, along with a carton of J B "rolling papers" from the store. There was evidence of rape or attempted rape. Through physical evidence gathered at the scene and information learned in the investigation of an unrelated rape, which had occurred about a week prior to the murder and in the same vicinity, appellant was charged with the crime. At the time he was charged, he was confined in the city jail pursuant to having been arrested on the unrelated rape charge. The issues raised in this appeal arise out of appellant's arrest for the unrelated rape, the search and seizure of certain items of evidence at that time, and statements made by appellant at that time.
 I
Appellant first contends that the seizure of items of clothing and other items at the time of his arrest on the unrelated rape charge was unconstitutional and that the items should have been suppressed. In response, the attorney general asserts that the police had probable cause to arrest appellant and that the items seized at the time were not unconstitutionally obtained.
The facts related at the suppression hearing establish that the police had reasonable cause to believe that appellant had committed the crime of rape. These facts were, as follows:
The police were investigating a rape that had occurred one week prior to the capital murder of Ms. McArthur and in the same general vicinity as the murder. According to the rape victim, she was attacked by a white male who had gotten into her truck with her at the Long Branch Bar on Navco Street. The bar was also near the Circle K convenience store and near the scene of the rape. When she passed by the bar, she heard someone holler. When she slowed down, her attacker jumped into her truck and began to shout and scream and ordered her to take him home. He directed her down Venetia Road, where he ordered her to stop. There, he attacked her. He then drove her truck down the road and turned onto a dim lane, where he stopped the truck and repeatedly raped her. He then drove back to the bar, turned on the truck's interior light, and told her to take a good look at him so she would remember what he looked like if she ever saw him in a lineup.
The rape victim later asked a friend to contact an employee of the Long Branch *Page 1045 
Bar and give her the description of the rapist to see if she knew who he was. The victim was told that a person named "Bob" or "Bobby" fit the description and that he had also been at the Long Branch Bar. Subsequently, a police officer met with the rape victim, and she directed him to the scene of the rape. While they were there, a car came by and stopped. The driver, who identified himself as Dale Cooley, asked them who they were looking for. Cooley explained that the dirt lane they were on led to his residence. The officer told Cooley that he was investigating a rape that had occurred in that driveway. Upon being given a physical description of the rapist, Cooley said, "Sounds like you're talking about my handyman, Bob King." He stated that appellant was at his house and that he had picked him up on the interstate highway and was letting him stay with him because he had nowhere to stay.
At this time, the police had some information about the murder, which had occurred a few hours earlier. They knew of a report that someone named "Bob" had left the Long Branch Bar around 3:00 a.m., which was around the time of the murder, and was last seen walking in the direction of the Circle K convenience store. They also knew that "rolling papers" had been taken from the store. It appears that the officers suspected that appellant might be connected with the murder, but after backup units arrived, they went to Cooley's house to arrest appellant for the earlier rape.
Cooley gave his consent to the police to enter his house and arrest appellant. Cooley warned the police that there were weapons inside his house. He also stated that appellant did not have an automobile. The police then proceeded to Cooley's house, where they entered and placed appellant under arrest for the earlier rape.
An officer may arrest without a warrant where a felony has been committed and he has reasonable cause to believe that the person arrested committed it. Owen v. State, 418 So.2d 214
(Ala.Cr.App. 1982); Ala. Code 1975, § 15-10-3(3). In the instant case, we find that the arresting officers had probable cause or reasonable cause as that term is used in § 15-10-3(3), to arrest appellant without a warrant.
We are not confronted here with the question of the right of the officers to enter Cooley's residence to effect the arrest of appellant without a warrant, since Cooley was the lessor and occupant of the house and was, thus, authorized to consent to the entry and the seizure of appellant. Payton v. New York,445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); United Statesv. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Appellant does not raise or argue this question on appeal.
When the officers and Cooley entered the residence, appellant, who was wearing a pair of shorts, came to the door. Officer Boone identified himself and told appellant that he had come to get him. Upon being asked to identify himself, appellant said he was Bobby James King. He continued, "I been expecting you, it's been on the news all day long." Boone then asked him what had been on the news all day long. Appellant stated, "About that woman getting killed up at the store." At this point, Boone read him his Miranda rights. Boone asked him if he had some pants he could put on, and appellant said yes. At that time, they were in a hallway. Appellant stepped from there through a door into a bedroom on their right, which was about six feet from where they had been talking. Boone accompanied him into the bedroom. Appellant picked up a pair of pants from a pile of clothes on the bed and started to put them on. Then, he put them back on the pile and picked up another pair of pants off that pile and began to put those on. Boone asked him if the clothes on the bed were his, and he stated that all of the clothes on the bed were his. The officer then seized all the items which were on the bed and in plain view. When appellant opened a dresser drawer to look for a shirt, the officer saw two or three packs of J B rolling papers. He also seized these rolling papers, since he recognized these papers as the same size and brand reportedly taken from the store where the capital murder had occurred. The officer also seized a *Page 1046 
pair of boots that were sitting in plain view by the bed. The boots were wet and muddy, and the officer knew that there were mudholes and water in the areas where the rape and the capital murder were committed and that mud had been found on the murder victim. Appellant was then handcuffed and taken away, along with the items seized.
It was subsequently discovered that there was blood on one of the pairs of trousers seized by the officer and that this blood was the same type as Ms. McArthur's and not the same type as appellant's. This evidence was introduced at trial, along with the rolling papers.
The record indicates that appellant was staying at the Cooley residence on a temporary basis because he had no other place to stay. Cooley stated that he allowed appellant to put his belongings in an extra bedroom and that appellant slept, sometimes, in that bedroom and, sometimes, on the couch in the living room. Cooley stated that the bedroom was not "set aside" for appellant and that he retained the right to enter it at any time.
The attorney general contends that the officers had a right to enter the bedroom, which was being used by appellant, and seize the items belonging to appellant because of the consent given by Cooley to conduct a search of the residence. The record shows that Cooley clearly gave permission to the officers to enter his residence to arrest appellant; however, contrary to the assertion of the attorney general, we cannot find in the record any indication that Cooley specifically consented to a search of the house or the bedroom. He may have expressly consented to the search in addition to consenting to the entry for the purpose of the arrest, but no one testified to that effect. Consent to search must be proved by clear and positive testimony and must be unequivocal, specific, and intelligently given, uncontaminated by any duress and coercion.United States v. Williams, 754 F.2d 672 (6th Cir. 1985). When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. Schneckloth v.Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973);Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788,20 L.Ed.2d 797 (1968). Since the State's position is tenuous, at best, we choose instead to bottom the disposal of this issue on the right of the officers to seize the items in appellant's room on the plain view doctrine hereinafter discussed. In disregarding the application of the consent exception to the instant warrantless search, we also note that we have chosen not to discuss the possibility of the application of the exception based on the dual existence of exigent circumstances and probable cause.
The attorney general also contends that the items "were properly seized because they were in plain view of the police and appeared to be evidence of crime." In anticipation of this argument, appellant, relying on Coolidge v. New Hampshire,403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (plurality opinion), argues that it was not "immediately apparent" to the officers that the items seized constituted evidence of crime and, therefore, that their seizure did not fall under the plain view exception.
We believe that appellant's argument is based on a misreading of Coolidge v. New Hampshire. The plain view doctrine authorizes the warrantless seizure of personal property where the initial intrusion which affords the officers a plain view is lawful, the discovery of the property is inadvertent, and the incriminating nature of the property is "immediately apparent." Coolidge, 403 U.S. at 466, 91 S.Ct. at 2038. Although, in Coolidge, this doctrine was adopted by only a plurality of the Court, it has since been recognized by a majority of that Court. See United States v. Hensley,469 U.S. 221, 105 S. Ct. 675, 83 L.Ed.2d 604 (1985); Texas v. Brown,460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (although this was also a plurality opinion, the Justices differed only as to the application of the doctrine rather than as to its validity); State v. Calhoun, 502 So.2d 808 (Ala. 1986). The phrase "immediately apparent" does not "imply that an unduly high degree of *Page 1047 
certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view doctrine.' "Texas v. Brown, 460 U.S. at 741, 103 S.Ct. at 1543. It does not mean that an officer must "be possessed of near certainty as to the seizable nature of the items." Id. The character of the property must be such as to give the officer cause to associate the property with criminal activity. Texas v. Brown, supra;Payton v. New York, supra; United States v. Minor, 756 F.2d 731
(9th Cir.), vacated on other ground, 474 U.S. 991,106 S.Ct. 401, 88 L.Ed.2d 353 (1985), on remand, 783 F.2d 154 (9th Cir. 1986); Moya v. United States, 761 F.2d 322 (7th Cir. 1984);State v. Calhoun, supra; McElroy v. State, 469 So.2d 1337
(Ala.Cr.App. 1985); Thomas v. State, 453 So.2d 1075
(Ala.Cr.App. 1984); Shipman v. State, 291 Ala. 484,282 So.2d 700 (1973). "The plain view exception would be worthless if officers had to be 'absolutely certain' that what they saw was seizable." W. LaFave, Search and Seizure § 6.7(a) (2d ed. 1987). As observed in Texas v. Brown:
 "As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief,' Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543] (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, non-technical' probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176 [69 S.Ct. 1302, 1311, 93 L.Ed. 1879] (1949). Moreover, our observation in United States v. Cortez, 449 U.S. 411, 418 [101 S.Ct. 690, 695, 66 L.Ed.2d 621] (1981), regarding 'particularized suspicion,' is equally applicable to the probable-cause requirement:
 " 'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' "
460 U.S. at 742, 103 S.Ct. at 1543.
Often some object, typically clothing, will be seized because of its potential value in identifying the suspect as the person who committed the crime for which he was lawfully arrested. This is permissible when it is probable that the defendant wore the clothing at the time of the crime and that it contains some substance, such as blood, semen, or mud, which will aid in establishing a fact. See, e.g., United States v. Sheard,473 F.2d 139 (D.C. Cir.), cert. denied, 412 U.S. 943, 93 S.Ct. 2784,37 L.Ed. 2d 404 (1973) (wherein the court held that, during the arrest of defendant for recent bloody murder and where defendant was dressed in fresh clothing at the time of his arrest, it was proper for officers to seize pants atop clothes hamper); People v. Holt, 18 Ill. App.3d 10, 309 N.E.2d 376
(1974) (wherein the court held that, during arrest of defendant for recent armed robbery where assailant was known to have fallen in mud in making escape and where defendant was dressed only in underwear when he was arrested, it was proper to seize pants on bed); State v. Holloman, 197 Neb. 139, 248 N.W.2d 15
(1976) (wherein the court held that, where the officer who was in appellant's home to arrest appellant for rape saw several pairs of shoes in bedroom while appellant was dressing, the officer properly picked up the shoes to see if any soles matched the distinctive prints found at the crime scene); Statev. Bruzzese, 94 N.J. 210, 463 A.2d 320 (1983), cert. denied,465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984) (wherein the court ruled that, where defendant who was arrested on a contempt charge was also a suspect in a burglary at which distinctive footprints had been found, it was proper *Page 1048 
for the arresting officer to pick up defendant's boots discovered nearby and check the soles). See also United Statesv. Blum, 753 F.2d 999 (11th Cir. 1985) (wherein the court found that the seizure of memoranda and papers in plain view, where there was probable cause to believe they had "evidential value," was authorized); United States v. Slocum, 708 F.2d 587
(11th Cir. 1983) (wherein the court held that the seizure of an entire file was authorized even though the officers did not take time to review each item in the file); State v. Collett,542 S.W.2d 783 (Mo. 1976) (wherein the court, in upholding the seizure of two women's purses found on the floor of a motel room rented by defendant when the officers were seeking to arrest defendant for escape, explained that it was reasonable for the officers to conclude that the purses might provide some evidence or clue as to where defendant might be located or with whom he might be found).
Having knowledge that there were guns in the house, for his own protection the arresting officer had every right to follow appellant into the bedroom where the clothes were piled on the bed when appellant went into the room for the purpose of obtaining a pair of trousers. For the same reason, the officer had a right to follow appellant to the dresser drawer and look inside when appellant opened it to obtain a shirt. An officer's compelling need to ensure his own safety and the integrity of the arrest gives him the absolute right to monitor the movements of an arrestee as the officer's judgment dictates.Washington v. Chrisman, 455 U.S. 1, 102 S.Ct. 812,70 L.Ed.2d 778 (1982). We find that the items seized were in plain view from a position where the officer had a right to be.
Of the items belonging to appellant, which were seized at the time of his arrest, only the J B rolling papers and a patch of cloth from his trousers containing the blood spot were offered as evidence by the State and admitted.
Having determined that the officers had probable cause to arrest appellant; that they had proper consent to enter the premises to do so; and that, during the arrest, the officer could see the rolling papers and trousers in plain view, we must now determine whether the officers had probable cause to reasonably believe that the papers and trousers were associated with criminal activity.
The reasonableness of the officer's act must be gauged at the time when he first viewed the items. At this point, the record indicates that the seizure was motivated by the officer's knowledge that appellant fit the description of a person who had committed a rape in the immediate vicinity approximately one week before; that appellant was a suspect in a bloody murder, robbery, and possible rape or attempted rape, which had occurred nearby only a few hours before; that appellant had just made an admission that he had been expecting the officers because of the murder; that the murder victim had been violently stomped and beaten to death; that there was mud on the murder victim's face and body; and that J B rolling papers had been taken from the store where the murder had occurred. The type of crimes involved, rape and murder, rendered the items of clothing piled on the bed, particularly the trousers, potentially critical evidence.
Moreover, it makes no difference that the seized items had no connection with the crime for which the officers initially intended to arrest appellant. Seizable items which inadvertently come into view of the officer lawfully searching in connection with another crime, or who otherwise has a right to be where he is, may be retained and used in prosecution of the crime to which they related if the officer is already in the constitutionally protected area. United States v. Looney,481 F.2d 31 (5th Cir.), cert. denied, 414 U.S. 1070,94 S.Ct. 581, 38 L.Ed.2d 476 (1973); Dannelley v. State, 397 So.2d 555
(Ala.Cr.App.), cert. denied, 397 So.2d 577 (Ala.), cert. denied, 454 U.S. 856, 102 S.Ct. 305, 70 L.Ed. 2d 151 (1981). Assuming entry of the premises was for the purpose of arresting the defendant for a certain crime, the object seized need not necessarily relate to *Page 1049 
that crime. United States v. Looney, supra. See also Abel v.United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668
(1960).
Thus, under these circumstances, the officer possessed probable cause to believe that the trousers constituted evidence of the crime for which appellant was expressly arrested, that is, the earlier rape. In addition, under these circumstances, the officer possessed probable cause to believe that the trousers and the J B rolling papers constituted evidence of a separate crime, the rape and the robbery-murder of Ms. McArthur. In conclusion, we hold that there was probable cause to arrest appellant, that the entry of the officers upon the premises for that purpose was proper, that the rolling papers and trousers were inadvertently discovered, that they were in plain view, that the officer had probable cause to believe that they were subject to seizure, as being evidence of the commission of a crime, and, finally, that they were properly admitted into evidence.
 II
Appellant next contends that the trial court committed error in denying his motion to suppress a statement made by him at the time of his arrest.
When the officer entered the residence to arrest appellant for the earlier rape, the officer told appellant that he had come to get him and asked him his name. Appellant gave his name and said, "I been expecting you, it's been on the news all day long." The officer then asked appellant what had been on the news all day long, and appellant stated, "About that woman getting killed up at the store." At this point, the officer gave appellant proper warnings in accordance with Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant contends that the answer given just prior to the warnings was incriminating and was obtained as a result of custodial interrogation in violation of Miranda. The Miranda
procedural safeguards are required only when a suspect is interrogated in a custodial setting. Miranda v. Arizona,384 U.S. at 477-78, 86 S.Ct. at 1629-30. Interrogation, as defined by the Supreme Court in Rhode Island v. Innis, 446 U.S. 291,100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), includes either express questioning or its functional equivalent. The Court defined this as words or actions on the part of police that the police should know are reasonably likely to elicit an incriminating response from the suspect. Id.
In the instant case, we need not determine whether the question asked appellant constituted interrogation, for after appellant was arrested and placed in a patrol car and after proper Miranda warnings, he stated to the officers again that he knew that they were coming because the store robbery had been on television. In effect, he made the same statement afterMiranda warnings that he had made before. Assuming, arguendo, the correctness of appellant's contention that his initial admission was procured in violation of the Fifth Amendment because Miranda warnings had not been given, his statement or admission is still admissible in evidence against him under the rule of Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285,84 L.Ed.2d 222 (1985). In Oregon v. Elstad, the Court held that after a valid waiver, the accused's reaffirmation of an initial voluntary statement, which was inadmissible because it was made without the benefit of Miranda warnings, was admissible. The Court held that since the initial statement was voluntary, it created no "primary taint" and, therefore, could not be construed to render the later statement automatically invalid.Id. at 314-17, 105 S.Ct. at 1296-98. We conclude that the initial admission, which appellant argues was unwarned, was made freely, voluntarily, and without compulsion or inducement. Since it was voluntary, it did not taint the subsequent voluntary statement obtained pursuant to proper Miranda
warnings.
The ruling of the trial court in denying the motion to suppress and the admission of the statement into evidence were proper.
Having addressed all issues raised by appellant on appeal and finding no reversible *Page 1050 
error, we affirm the judgment of the trial court.
AFFIRMED.
ALL JUDGES CONCUR.