LEIGH M. CLARK, Supernumerary Circuit Judge.
This appeal is from a conviction of robbery and a penitentiary sentence of twelve years.
Mrs. Carol Click testified that on August 30, 1975, while she was working at Diplomat Coiffures, she was robbed by a masked individual wielding a pistol and wearing rubber gloves. She said that he also robbed a customer of hers; that the robber used adhesive tape and towels to blindfold and cord to tie up the two victims; that he obtained a First Alabama Bank bag containing money and checks from the Coiffure shop and left. On the trial she positively identified defendant as the robber.
Without going into unnecessary details, we set forth the above summary of some of the evidence as sufficient to show that the jury was fully justified in finding defendant guilty. Defendant offered no evidence in his behalf.
The only insistence upon a reversal is based upon the action of the court in overruling defendant's motion to suppress the fruits of the search of defendant’s room at the Fleur de Lis across the highway from the Diplomat Inn in which the Diplomat Coiffures was located. The items were a toy pistol, rubber gloves, a mask, adhesive tape and a First Alabama Bank bag, which were identified by Mrs. Click as having been used by the robber. Only the adhesive tape was obtained the evening of the robbery; the other items were obtained the next morning on a search made under a warrant. Appellant does not question the sufficiency of a *410 showing of probable cause for the issuance of the search warrant, but contends that the action of the officers the evening of the robbery and the search the following day were both in violation of defendant’s right of security against unreasonable searches and seizures, as guaranteed by U. S.Const. Amend. IV, in that the action the evening of the robbery constituted an unreasonable search and seizure that poisoned the fruit of the search made under the warrant the next day.
The issue between the parties seems to narrow to whether the action of the officers the evening of the robbery constituted an unreasonable search and seizure.
The parties agree that if defendant voluntarily consented to the entry of his room on the evening of the robbery, there was no violation of his constitutional rights. A person’s motel room is protected against unreasonable search and seizure of articles therein. The State contends that defendant voluntarily consented to an entry of his room on the afternoon of the robbery. Defendant-appellant contends that he did not, that although he did express permission for the officers to enter his room, such permission was exacted or extorted from him against his volition, by fraud. There is no disagreement as to the principle:
“In order to constitute a waiver it must be clearly shown that consent given to an otherwise illegal search was voluntary, that is, that it was free from coercion, duress, or fraud, and not given merely to avoid resistance. 79 C.J.S. Searches and Seizures § 62.”
The witnesses on the motion to suppress were Officers Hamilton and Li-taker; Mr. Charlie Marshall, desk clerk at the Fleur de Lis, and defendant.
According to the officers, the customer at the Diplomat Coiffures who was also robbed joined the officers at the Fleur de Lis in an interview with defendant. The customer was not able to identify defendant as the robber. At that time defendant was not dressed as the robber was dressed, and, of course, he did not have on a mask. Officer Hamilton testified that he asked defendant what he was doing in Montgomery and whether he had any identification on him and defendant replied that he did not. He asked defendant whether he had anything in his room to identify him. The defendant said that the desk clerk had told defendant that the officers needed a search warrant to search his room. Officer Hamilton said that he told defendant that they needed to find some identification to prove who he was and asked the defendant “Well, do you have any objection to us looking in your room for any identification ?” and he said, “I don’t have any objection; I don’t care if you see it.” Then defendant unlocked the door of the room and stopped near the door and the officers went by and looked in the room, at which time Officer Litaker noticed an open paper bag with a roll of adhesive tape in it, and said, “Look at this, Charlie,” at which time defendant bolted from the room, and the officers gave him chase for a considerable distance. No officer had arrested defendant at the time. They made it plain to him that they were merely investigating and that they would like for him to be identified.
The desk clerk testified that on the evening of the robbery a detective came to him and asked him as to the identity of the occupants of several rooms, including the room occupied by defendant. He gave the officer the names of some of the people, but he was unable at the time to tell him some of the others. After the officer left, defendant came to him and asked, “What was the trouble.” The witness noted the effort of the customer in the Diplomat Coiffures to identify defendant; the police used no force against defendant. After they talked with defendant about identifi *411 cation, defendant told them that they could look in his room. At one point defendant said, “I will take you over there.” The witness said, “and the next thing I knew was him running.” Appellant takes great comfort out of the following testimony of Mr. Marshall elicited by defendant on cross-examination:
“A. He said that if he asked him — This is what he said, ‘Do I have to have a search warrant to go in the room ?’ ‘Well, if we have to have a search warrant we will get one.’
“Q Meaning that if he insisted on a search warrant they would get one ?
“A Yes, sir.
“Q Then he said it was unnecessary, ‘You can go in my room’ ?
“A Yes, sir.”
Appellant takes the position that by the last quoted portion of the witness’ testimony it was shown that the officers made a misrepresentation to defendant of a material fact, to the effect that they could procure a valid search warrant, when as a matter of fact, according to appellant, there was no justification, by reason of a lack of probable cause, for the issuance of a search warrant. Appellant further contends that the quoted portion of the testimony of the witness Marshall was uncon-tradicted. Although it appears that neither officer was asked by either side categorically whether he made the statement quoted from Mr. Marshall’s testimony, their testimony as a whole furnishes a basis for a conflict in the evidence on the point. They were examined by both the State and defendant. They purported to testify in full as to the conversation among them and defendant, in the presence of Marshall, as to permission from defendant to enter defendant’s room. The testimony of neither contains in substance the quoted portion of Marshall’s testimony.
Even if it could be correctly said that the quoted portion from Marshall’s testimony was uncontradicted, we are unable to agree with appellant that it constituted such a misrepresentation of a material fact as to vitiate the consent given by defendant to an entry to his room. The statement, “If we have to have a search warrant we will get one,” may be subject to the inference that it carried the implication that they had sufficient factual information to make a showing of probable cause to warrant the issuance of a search warrant, but not necessarily so. There could as well have been the implication that if denied access to the room, it was their intention to attempt to obtain a search warrant. To construe it as subject to the implication only that they were assuring defendant of the certainty of the prompt issuance of a valid warrant by which they could enter the room is to restrict it unduly as evidence for the State or flex it unduly as evidence for defendant, or both.
It is to be noted also that in defendant’s testimony on the motion to suppress, it is not shown that he heard what Mr. Marshall says was stated to him by the officers, or one of the officers. If he did not hear it, he did not rely upon it, which is a requisite to actionable fraud. He did testify that Officer Hamilton said to him just before he walked over to his room, “We could go ahead and arrest you for investigation of the robbery.” According to defendant, it was this statement that caused him to conclude, “I don’t have any other choice.” Officer Hamilton was asked if he told defendant that he would place a charge against him, and he replied, “No, sir.”
That express consent was given by defendant for the officers to enter his room is without dispute and without a possible inference to the contrary. The evidence perhaps permits an inference that his consent was not voluntary, that is, that it was induced by a misrepresentation, but such an inference is not necessary, and the rea *412 sonableness vel non of such an inference was for the trial court. We can well see that the trial court justly concluded that defendant would have preferred that the officers not enter his room but that he thought that the better way for him out of his predicament at the time was for him to allow the officers to enter the room, in the probable belief on his part that they would see no incriminating evidence in his room, that they would not make a search thereof without a warrant, and that upon such a view of the room at the time, he for the time being would be let alone and given enough time to dispose of the evidence against him. It was an extraordinary fortuity, the observance of tape with hair on it in an open bag, which he could not readily have anticipated, that foiled his plans. That the officers after observing the telltale tape with hair on it did not make a search of the room without a warrant, even after defendant had fled, is indicative of the probity of the officers as to their dealing with defendant on a matter involving his constitutional rights that is incon-sonant with any claimed coercion or fraud on their part.
The trial court did not err in admitting in evidence the items by which the uncon-tradicted evidence shows defendant committed the robbery charged. We have searched the record for any and all error prejudicial to defendant and have found none. The judgment should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur, except CATES, P. J., who was not sitting.