[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1246 
The appellant, Zackery Wedgeworth, received a sentence of life imprisonment without parole for intentional murder, made capital because it was committed during a robbery in the first degree, in violation of § 13A-5-40(a)(2), Code of Alabama 1975, and during a kidnapping in the first degree, in violation of §13A-5-40(a)(1), Code of Alabama 1975. The appellant raises several issues on appeal.
On the morning of November 10, 1989, officers of the Tuscaloosa Police Department went to the home of Mrs. Corinne Harless in response to a missing persons report. Upon entering Mrs. Harless's home, investigators determined that a possible *Page 1247 
burglary and kidnapping had occurred, because the home had been ransacked. Mrs. Harless's automobile, a gold 1985 Mercury Cougar, was also missing.
That afternoon at approximately 2:30 the appellant and four others were seen by police in Mrs. Harless's automobile. All five occupants, including the appellant, were subsequently ordered out of the car, were searched, were handcuffed, and were placed in patrol cars. The appellant was taken to the police station by Officer Everette and the appellant was advised of his Miranda rights before entering the station.
While transporting one of the occupants of the vehicle, Tracy Caldwell, to the homicide unit, Officer M.A. Flowers learned from her that she and the appellant had been living in a room at the Moon Winx Lodge Motel. Officer Flowers then radioed this information to Officer Everette and several officers, and investigators were dispatched to the motel to search for Mrs. Harless.
Upon entering the motel room, the police found several items containing the victim's name. The investigators also seized several items implicating the appellant in the kidnapping of Harless. However, Mrs. Harless was not found in the motel room.
At approximately 4:00 p.m., the appellant, after having been advised of his Miranda rights, made a statement indicating that he did not know anything about the victim or where the victim could be found. Later, at approximately 8:15 p.m., after being advised of his Miranda rights again, the appellant confessed to the kidnapping of Mrs. Harless and, after being allowed to speak privately with Tracy Caldwell, the appellant confessed to murdering Mrs. Harless.
In his statements, the appellant stated that he and his accomplices grabbed Mrs. Harless as she got out of her automobile just after arriving at her house. Mrs. Harless screamed and a pair of panties were shoved into her mouth and the group forcibly held her down on the ground. They went through the contents of her purse and used a Pepsi Cola soft drink bottle to hit her in the face.
Mrs. Harless's body was found in a large mud hole around 4:00 or 4:30 p.m. on November 10, 1989.
 I
The appellant first contends that the trial court erred in refusing to suppress evidence obtained by the police in a warrantless search of the appellant's motel room.
This court has held that a motel room is protected by the Fourth Amendment's prohibition against unreasonable searches and seizures. Dawson v. State, 335 So.2d 409 (Ala.Cr.App. 1976). See also U.S. v. Newbern, 731 F.2d 744 (11th Cir. 1984). This court has also held, however, that probable cause combined with the existence of exigent circumstances justifies a warrantless search. Cooper v. State, 480 So.2d 8 (Ala.Cr.App. 1985). See also Blaine v. State, 366 So.2d 353 (Ala.Cr.App. 1978). Moreover, an officer has probable cause to conduct a search if a reasonably prudent person based on the facts and circumstances that the officer knows would be justified in concluding that the object of the search or items sought are connected with criminal activity, and that they will be found in the place to be searched. Gord v. State, 475 So.2d 900
(Ala.Cr.App. 1988).
The appellant argues specifically that no exigent circumstances existed because the only reason the police gave for entering the motel room was because Mrs. Harless was still missing and because the appellant and Caldwell had been living in the motel room. However, this court has ruled that exigent circumstances exist to justify a warrantless search upon a reasonable cause to believe that those premises contain individuals in imminent danger of death or severe bodily harm.Ash v. State, 424 So.2d 1381 (Ala.Cr.App. 1982). Moreover, where exigent circumstances exist and there is probable cause to believe that evidence of a crime may be found, an immediate warrantless search is justified as an exception to the Fourth Amendment's warrant requirement. Hancock v. State, *Page 1248 368 So.2d 581 (Ala.Cr.App.), writ denied, 368 So.2d 587
(Ala.Cr.App. 1979).
Though the appellant claims that the fact that the appellant had been living at the Moon Winx Lodge Motel would not give the police reason to believe that the victim would be in the motel room, the police were trying to locate the victim at the time of Caldwell's statement to Officer Flowers. The Fourth Amendment does not require police officers to delay in the course of an investigation of a serious crime if to do so would endanger the lives of others. Jones v. State, 49 Ala. App. 438,272 So.2d 910 (1973). A review of the record shows that probable cause and exigent circumstances were present to allow the warrantless search of the appellant's motel room.
The appellant also contends that even had the search of the motel room not violated the Fourth Amendment, the evidence seized there should not have been admitted at trial because it was not within the "plain view" of the police. The plain view doctrine authorizes the warrantless seizure of personal property where the initial intrusion is lawful, and the incriminating nature of the property is immediately apparent.Williams v. State, 527 So.2d 764 (Ala.Cr.App. 1987).
Items are seizable that come into view of an officer lawfully searching in connection with another crime. King v. State,521 So.2d 1360 (Ala.Cr.App. 1987).
"Immediately apparent" for purposes of the plain view doctrine requires that the officer has probable cause from the nature of the seized property, to associate the property with criminal activity. For example, the seizure of clothing under the plain view doctrine is permissible when it is probable that the defendant wore the clothing at the time of the crime and the clothing contained blood or mud, and would aid in establishing a fact. See Williams, supra. Furthermore, the requirement for a warrantless search that the officer immediately recognize the object as evidence of wrongdoing requires that the officer's judgment be grounded in probable cause. However, the officer need not be convinced beyond a reasonable doubt as to the incriminating nature of the evidence discovered, and it is sufficient if the evidence raises the probability that criminal activity is afoot.
A review of the record indicates that the discovery of the evidence obtained in the appellant's motel room was justified under the plain view doctrine.
Two officers testified that various personal items from the victim's purse were found on a nightstand and that some items of identification contained the victim's name, including the victim's checkbook. Other purses were found under the nightstand. A bag from Wagner's was found under the dresser. An umbrella was found behind the door. The innersoles of tennis shoes and dirty socks were found in the sink. Pepsi Cola soft drink bottles with mud on them were sitting on the vanity. An investigating officer testified that they took only what was in plain view and that they did not look in "every nook and cranny."
The appellant contends that the police searched under the dresser and under the nightstand. However, the items taken from under the dresser and nightstand were still in plain view. Nowhere in the testimony is there anything to suggest that the officers had to open or move anything to find these items. These items were clearly in plain view. Moreover, the police testified that they did not look up into the ceilings, take the mattresses apart, or dismantle the television.
Furthermore, the items seized from the appellant's motel room could also have been admitted under the inevitable discovery rule. Under the inevitable discovery rule, evidence is admissible that would otherwise be excludable if it inevitably would have been discovered by lawful means had the illegal conduct not occurred. United States v. Hernandez-Cano,808 F.2d 779, 782 (11th Cir.), cert. denied, 482 U.S. 918,107 S.Ct. 3194, 96 L.Ed.2d 682 (1987). In this case, the police had exigent circumstances to enter and then secure the motel room. Even had the officers not *Page 1249 
seized anything at this point and merely secured the area, they would have had probable cause to obtain a warrant and search the room and would have found all of these items that were in plain view.
 II
The appellant next contends that considering the totality of the circumstances, the admission into evidence of the appellant's statements to the police was in violation of his constitutional rights and therefore constituted reversible error.
Officer Everette testified that he advised the appellant of his Miranda rights before he took him inside the police station's homicide interrogation room. The appellant contends that the testimony conflicts on whether Everette was the officer who transported the appellant from the arrest scene to the station room. The appellant testified that he had been transported by Officer Bies, but Bies testified that he did not transport the appellant to the homicide unit, but that he had transported another suspect.
This conflict, however, does not affect the admissibility of the statement because the credibility of the witnesses is for the factfinder to determine. Bush v. State, 523 So.2d 538
(Ala.Cr.App. 1988). Moreover, the trial court's ruling based upon conflicting evidence given at a suppression hearing will not be overturned "unless found to be manifestly contrary to the great weight of the evidence." Ex parte Matthews,601 So.2d 52 (Ala. 1992), quoting Williams v. State, 456 So.2d 852
(Ala.Crim.App. 1984). A review of the record indicates that the trial court's decision to admit into evidence the appellant's statements was not manifestly contrary to the great weight of the evidence.
The appellant also contends that he was coerced into making his statement and that the statements, therefore, should not have been admissible at trial. The appellant supports his contention with evidence that he had been in custody for several hours at the time the statement was made, that he had been told that his girlfriend had already tried to help police and that the victim's body had already been found.
However, the record indicates that the appellant was not subjected to any extraordinary circumstances in regard to his interrogation. The appellant was questioned at several intervals, spent some of the time talking with narcotics officers about helping them set up a drug dealer, and was also allowed the opportunity to talk with his girlfriend, Tracy Caldwell. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed in obtaining a confession, the ruling of the trial court on voluntariness need only be supported by substantial evidence and voluntariness need not be established to a moral certainty. Jackson v. State, 562 So.2d 1373 (Ala.Cr.App. 1990).
In addition, the appellant claims that he could not comprehend or understand the cursory advisement of hisMiranda rights and the purported waiver of his rights because he had dropped out of tenth grade special education classes at the age of 19 and functions at a level "significantly below normal." However, there was no evidence presented that the appellant was unable to understand his rights. The level of the defendant's mental capability is merely one factor affecting the validity of a waiver of rights and the voluntariness of the confession. Whittle v. State, 518 So.2d 793 (Ala.Cr.App. 1987). Even the fact that the defendant had only a fifth-or sixth-grade education and is functionally illiterate does not vitiate the admissibility of the confession but goes only to its weight and credibility. Smith v. State, 529 So.2d 1022
(Ala.Cr.App. 1987). The appellant contends the police did not cease questioning him after he requested to talk to a lawyer. The police officers involved stated that the appellant never requested to talk to a lawyer. The appellant further argues that the officers offered him "help" if he would assist the police in some narcotics investigations. Although the appellant did accompany some of the narcotics officers to some neighborhoods, the officers testified *Page 1250 
that the appellant was the one who contacted them and offered to help them and, further, the appellant never supplied them with any useful information. "When there is conflicting evidence of the circumstances surrounding an incriminating statement or a confession, it is the duty of the trial judge to determine its admissibility, and if the trial judge decides it is admissible his decision will not be disturbed on appeal 'unless found to be manifestly contrary to the great weight of the evidence.' Williams v. State, 456 So.2d 852, 855
(Ala.Crim.App. 1984)." Matthews. Viewing the evidence from a totality of the circumstances, the record indicates that the appellant was read his Miranda rights and that his confession was made voluntarily and with the knowledge of the ramifications such confession would cause.
 III
The appellant next contends that the evidence admitted at trial was insufficient to prove his guilt beyond a reasonable doubt. The appellant specifically claims that a reasonable doubt existed as to the actual cause of the victim's death. Dr. Kenneth Warner testified that he could not be sure of the victim's cause of death and that she could have died from being beaten or from having been run over by a car. Such speculation as to the cause of death was sufficient to inject a reasonable doubt into the juror's minds, the appellant contends.
However, this court has held that a conviction will not be set aside on the basis of insufficiency, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence is so decided against the verdict as to clearly cause the reviewing court to find that the verdict was wrong and unjust. Brown v. State, 588 So.2d 551 (Ala.Cr.App. 1991). Moreover, it is not the province of the Court of Criminal Appeals to reweigh the evidence. As a rule, this court will uphold the jury's verdict and the trial court's judgment thereon unless palpably contrary to the great weight of evidence and manifestly wrong. Watkins v. State, 565 So.2d 1227
(Ala.Cr.App. 1990). A review of the record indicates that the jury's verdict was not palpably contrary to the great weight of the evidence and was not manifestly wrong.
The appellant was arrested while driving the victim's vehicle; personal items belonging to the victim were found in the appellant's motel room; and the victim's body had been recovered from a mud hole and clothing and socks with mud on them were found in the appellant's motel room. Furthermore, the appellant's girlfriend stated that they had disposed of the body. His friend Mark McKinney testified that the appellant had planned to burglarize the victim's house and to kill her if she returned during the robbery. Moreover, Anthony Brown testified that the appellant sold the victim's ring, at which time he stated that the ring had come from a dead woman. The victim had been beaten, and bloodstains were found on a pair of her panties in her house; a similar pair of the victim's panties had been found in the appellant's motel room. The appellant by his own admission stated that he and his accomplice had beaten the victim, tied her up, and put her in the trunk of the car. Clearly, the evidence presented at trial was sufficient to find the appellant guilty as charged.
 IV
Finally, the appellant contends that the trial court abused its discretion in overruling his objection to the testimony of a "surprise" witness. Specifically the appellant argues that the appearance of Anthony Brown, the State's witness who was made available to the defense counsel approximately 50 minutes before he was to testify, effectively deprived the appellant of several constitutionally guaranteed rights. The appellant claims that he was deprived of 1) a meaningful opportunity to discover the essence of the witness's testimony, 2) the opportunity to have counsel question prospective jurors regarding any possible relationship with the witness, and 3) the opportunity to check the witness's background and criminal history and his relationship to any other witnesses. However, *Page 1251 
a review of the record indicates that the appellant's contentions are groundless. Anthony Brown, a witness to the appellant's sale of the victim's ring, was not known to the prosecutors until shortly before they rested their case, and Brown was first interviewed by the prosecutors and the police on the morning he was called to testify. The appellant's counsel objected to Brown's testimony on the ground that counsel was a surprise witness that they had not had the opportunity to interview. The trial court found that there had been no suppression of information and that the witness would be allowed to testify, but it gave counsel for the defense an opportunity to interview the witness before he was called to testify. The court also based its decision on the ground that the State was not required to disclose its witnesses before trial pursuant to Rule 16.1, A.R.Crim.P.
The appellant claims that the State knew of Brown's identity long before trial and that it did not provide his identity during discovery proceedings, but that contention is not supported by the evidence. Moreover, this court has held on numerous occasions that there is no requirement of the pretrial discovery of the identity of a State's witness. Law v. State,515 So.2d 75 (Ala.Cr.App. 1987). This court has also held that the rules of discovery did not ever require the prosecution to disclose its witness list nor give the defense any right to inspect the evidence in the possession of the State. Curry v.State, 502 So.2d 836 (Ala.Cr.App. 1986).
Furthermore, the witness did not possess any exculpatory or impeachment evidence that would have been beneficial to the appellant. Thus, under Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), there was no information withheld from the appellant to which he would have been entitled.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.