BURKE, Judge.
Donald Eugene Nix appeals his guilty-plea conviction of the illegal possession of a controlled substance, See § 13A-12-212(a)(1), Ala.Code 1975. Nix was sentenced to 13 months’ imprisonment; that sentence was suspended and he was ordered to pay an assessment of $1,000 to the Drug Demand Assessment Fund, $100 to the Department of Forensics Science Fund, $50 to the Alabama Crime Victims *1103 Compensation Fund, and court costs. His driver’s license was suspended for six months.
The record indicates that Nix originally entered a plea of not guilty. He filed a motion to suppress the evidence collected during a search of the vehicle and of his person, as on his motion to suppress and it was denied. Nix pleaded guilty but reserved for appeal the issues concerning the legality of his detention and the search and the seizure of the evidence.
At the hearing on the motion to suppress, defense counsel, who had previously attempted to withdraw as Nix’s counsel and submitted that she had unsuccessfully attempted to communicate with Nix, affirmed that Nix was not present for the hearing. She stated that she had attempted to inform Nix through his father, with whom he was living, about the hearing. She stated that she did not want to inconvenience the court or the two witnesses, who were the arresting officers, and that she was willing to proceed. The court determined that the witnesses would testify at that time and that the hearing would be continued and that Nix would be informed of a future date at which he must be present.
Cpl. A.D. Ferguson of the Montgomery Police Department testified that on the date of the offense he and Officer M.E. Mashburn were on patrol when a vehicle traveling toward them from a side street swerved into the officers’ traffic lane. Cpl. Ferguson testified that the vehicle almost hit their police car, so they turned the police car around to conduct a traffic stop and engaged the lights and siren on the police car. When the passengers in the vehicle appeared to notice that the police car was pursuing them, they turned into a driveway. A traffic stop was conducted and the officers determined that neither of the two men in the vehicle, who were both Caucasian, lived at the house. Further, the vehicle was later determined not to be registered in either of the men’s names. During the stop, according to Cpl. Ferguson, neither the driver nor the passenger was able to produce identification, but both men gave the officers their names. Cpl. Ferguson instructed the driver, who was later confirmed to be William Dowe, to get out of the vehicle, and a patdown search was conducted for safety reasons. Marijuana was discovered on Dowe and he was handcuffed and detained. Officer Mash-burn then conducted a patdown search on the passenger, who was later confirmed to be Nix. A crystal-like substance was found on Nix that was subsequently determined to be methamphetamine.
On cross-examination, Cpl. Ferguson testified that they were patrolling in the area of the stop because they were assigned to the crime-reduction team that patrols in areas producing a high volume of complaints, especially for drug activity. He testified that they stopped the vehicle because it almost hit their police car. He testified that while conducting the patdown search, he felt what he believed to be a baggie containing narcotics in Dowe’s pocket. He stated that his belief was based on his experience and training. He asked Dowe what the object was and, after Dowe responded that he did not know, Cpl. Ferguson pulled the baggie out of his pocket. He stated that, based on his experience, he believed that the baggie contained marijuana, and he placed Dowe in handcuffs.
Officer M.E. Mashburn, of the Montgomery Police Department, also testified at the hearing. He stated that he was riding with Cpl. Ferguson at the time of the offense and was able to see the men in the vehicle before the stop. Officer Mash-burn testified that “both white males inside the vehicle were very nervous, seemed *1104 to be shooken [sic] up by our presence when they saw us.” (R. 28.) He stated that the vehicle almost ran a stop sign before nearly colliding with the police car in a T-bone fashion. The vehicle pulled into a driveway, and the owner of the home later confirmed that he did not know the men in the vehicle. The driver was unable to produce any identification, and neither man could produce vehicle ownership; both men indicated that they did not own the car. Officer Mashburn stated that, as Cpl. Ferguson removed the driver from the vehicle, he continued to speak with the passenger and “noticed there was shaking, sweating, [he] wouldn’t look me in the eye.” (R. 29.) While Nix was still seated in the passenger side of the vehicle, Officer Mashburn observed in his pocket “a knot and a small clear part of a plastic bagg[ie]” in his right front change pocket. (R. 29.) Based on his experience and training, he believed that the baggie contained narcotics. Cpl. Ferguson then found marijuana on the driver, so Officer Mashburn had the passenger get out of the vehicle because, he said, they did not know who owned the vehicle and the driver did not have a license. He conducted a patdown search of the passenger and removed the plastic baggie which he believed contained crystal methamphetamine. He then asked the passenger if there was any more in the car, and the passenger refused to answer and would not look Officer Mashburn in the eye. Officer Mashburn testified that he then continued the pat-down search and found a “big bulge in his left back pocket.” (R. 32.) He removed a zippered bag that contained two large clear plastic bags containing what appeared to be crystal methamphetamine. Officer Mashburn stated that he handcuffed the passenger, Nix, and transported him to narcotics headquarters, where he discovered Nix’s name.
Following this testimony, defense counsel argued that the narcotics evidence should be suppressed because, she argued, the search of the driver was performed without probable cause and was therefore illegal, and this “carrie[d] over” to the subsequent search of Nix. Because Nix was searched after marijuana was illegally seized from Dowe, defense counsel argued that the methamphetamine should be suppressed as the fruit of the poisonous tree.
On a subsequent date, Nix appeared for sentencing and entered a guilty plea following a colloquy, reserving the right to appeal “on the suppression.” (R. 40.) He was sentenced approximately two weeks later.
On appeal, Nix argues that his motion to suppress should have been granted because, he says, the evidence was discovered as a result of an illegal search and seizure. He contends that, because Officer Mashburn testified that he could see the bag only from the knot upward in Nix’s pocket and could not see the methamphetamine in the baggie, it was not in plain view and it was not discovered pursuant to the plain-feel exception.
Both the plain-sight and the plain-feel exceptions to a warrantless search have equal application to the propriety of the discovery of narcotics, so long as the patdown search was proper under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). “The United States Supreme Court has held also that a police officer may intrude beyond the outer clothing of a suspect if, during the patdown, the officer ‘feels an object whose contour or mass’ gives him ‘probable cause to believe that the [object] is contraband.’ Minnesota v. Dickerson, 508 U.S. 366, 375-76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).” Ex parte James, 797 So.2d 413, 418 n. 1 (Ala.2000). “While this pat-down is designed to secure the officers’ safety and discover any *1105 weapons or other tools that could harm the arresting officer, if, during the pat-down, an officer plainly views an item of contraband or discovers an item of contraband through ‘plain feel,’ the officer may investigate and seize that item (so long as it turns out actually to be contraband). [United States v.] Campbell, 549 F.3d [364,] 373 [ (6th Cir.2008) ]; United States v. Garcia, 496 F.3d 495, 505 (6th Cir. 2007).” Webster v. United States, (No. 1:10-0002) (M.D.Tenn. April 8, 2010) (not reported in F.Supp.2d) (“[Officer] Ward had testified that the tip of a baggie, which was of the type consistently used to transport small quantities of drugs, was plainly visible during the pat-down, as it was sticking out of Webster’s front pocket. Also, Ward had testified that, when patting down this area from which the baggie was sticking out, he felt a ‘large lump,’ also consistent with the presence of drugs in the pocket.... Based on this testimony, Officer Ward was justified in removing and seizing the baggie under the ‘plain feel’ and ‘plain view5 doctrines.”) See also State v. Olden, (No. 23137, Jan. 22, 2010) (Ohio Ct.App.2010) (not published in Ohio Reports or North Eastern Reporter) (Officer felt a lump and a baggie in Olden’s pocket and saw a portion of the baggie sticking out of Olden’s pocket, which he believed, based on his experience, to contain narcotics; thus, the incriminating nature of the evidence was immediately apparent and the seizure was justified). United States v. Walker, 181 F.3d 774, 778 (6th Cir.1999) (police may seize nonthreatening contraband detected by touch during a protective patdown search if the search stays within the bounds marked by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
Moreover, under the plain-view doctrine, if the police are lawfully in a position to see an object and the incriminating nature of the evidence is immediately apparent, the evidence may be seized without a warrant. United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).
“The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no ‘search’ within the meaning of the Fourth Amendment — or at least no search independent of the initial intrusion that gave the officers their vantage point. See Illinois v. Andreas, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983); Texas v. Brown, 460 U.S. 730, at 740, 103 S.Ct. [1535] at 1542 [(1983) ]. The warrant-less seizure of contraband that presents itself in this manner is deemed justified by the realization that resort to a neutral magistrate under such circumstances would often be impracticable and would do little to promote the objectives of the Fourth Amendment. See [Arizona v.] Hicks, [480 U.S. 321,] at 326-327, 107 S.Ct., at 1153 [(1987)]; Coolidge v. New Hampshire, 403 U.S. 443, 467-468, 469-470, 91 S.Ct. 2022, 2028-2029, 2040, 29 L.Ed.2d 564 (1971) (opinion of Stewart, J.).”
Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). “Furthermore, the requirement for a war-rantless search that the officer immediately recognize the object as evidence of wrongdoing requires that the officer’s judgment be grounded in probable cause. However, the officer need not be convinced beyond a reasonable doubt as to the incriminating nature of the evidence discovered, and it is sufficient if the evidence raises the probability that criminal activity is afoot.” Wedgeworth v. State, 610 So.2d 1244, 1248 (Ala.Crim.App.1992).
*1106 In the present case, the vehicle in which Nix was traveling ran a stop sign and nearly hit a police car. Officer Mash-burn testified that the men were visibly nervous when they became aware of the officers. They pulled their vehicle into an unknown person’s driveway. They had no identification or driver’s licenses and the vehicle did not belong to them. The officers patted the men down for safety. Before Nix was patted down, Officer Mash-burn saw the knotted baggie protruding from the coin pocket of Nix’s pants. Moreover, Officer Mashburn testified that, based on his experience, he immediately believed that the baggie contained narcotics. This factually distinguishes the instant case from Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), Adams v. State, 815 So.2d 574 (Ala.Crim.App.1999), and Tolbert v. State, 111 So.3d 747 (Ala.Crim.App.2011). In those cases, the officer reached into the defendant’s pocket without first observing anything protruding from it.
Second, it was reasonable for Officer Mashburn to rely upon his experience to suspect that the plastic baggie in Nix’s coin pocket contained illegal drugs. His suspicions were further confirmed by Nix’s nervous demeanor. Thus, unlike the facts of Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993),[1] the seizure was supported by more than the sight of the protruding plastic baggie. Here, there were reasonable and particularized grounds on which to conclude that Nix was guilty of possessing narcotics in the plastic baggie. See, e.g., People v. Harris, 62 Cal.2d 681, 683, 43 Cal.Rptr. 833, 401 P.2d 225 (1965) (probable cause existed to search defendant where arresting officer saw “exposed portion of the plastic bag in her pocket; he knew from his experience as a narcotics investigator ... that narcotics are commonly packaged in plastic bags; and he knew that [Harris’s husband] had just been arrested”).
Because the baggie was in plain view and was immediately identified by Officer Mashburn as containing contraband, and based on the totality of the circumstances, Officer Mashburn had probable cause to seize the methamphetamine during the lawful patdown.
AFFIRMED.
WINDOM, P.J., and JOINER, J., concur.
WELCH, J., dissents, with opinion.
KELLUM, J., joins in dissent by Judge WELCH.

. The United States Supreme Court in Dickerson held that the plain-view doctrine did not support the warrantless search of a lump in defendant’s pocket where the incriminating object was not immediately identifiable as contraband.