KELLUM, Judge.
Michael Jerome Cheatwood was arrested and charged with unlawful possession of a controlled substance, see § 13A-12-212(a)(1), Ala. Code 1975, and possession of drug paraphernalia, see § 13A-12-260, Ala. Code 1975. Cheatwood filed a pretrial motion to suppress the evidence seized as a result of a Terry [1] frisk, namely, a pill bottle containing methamphetamine. Following an evidentiary hearing, the circuit court granted Cheatwood's motion to suppress. Pursuant to Rule 15.7, Ala. R. Crim. P., the State appeals the circuit court's ruling.
The evidence presented at the suppression hearing established the following: On August 21, 2014, Deputy Chris McGahee with the Blount County Sheriff's Department received a request for a welfare check at the Dollar General discount store in Warrior, Alabama. Deputy McGahee found Cheatwood "passed out" in his vehicle in the parking lot outside the store. (R. 4.) Deputy McGahee approached Cheatwood and spoke to him from outside the vehicle. He testified that Cheatwood smelled of alcohol and that he had an open can of alcohol in the center console of his car. Deputy McGahee asked Cheatwood if he had "been drinking" and Cheatwood responded that he had. (R. 4.) After Cheatwood admitted he had consumed alcohol, Deputy McGahee initiated an investigation to determine whether Cheatwood was "under the influence." (R. 5.) Deputy McGahee ordered Cheatwood out of his vehicle and conducted a patdown search "for officer safety." (R. 5.) Cheatwood raised his shirt, revealing a pocketknife. Deputy *884 McGahee removed the pocketknife and noticed an unlabeled pill bottle protruding from Cheatwood's back pocket. Deputy McGahee asked about the bottle and Cheatwood told him that it contained crushed up caffeine pills. When Deputy McGahee ordered him to hand over the bottle, Cheatwood placed the bottle behind his back and passed it from hand to hand. Deputy McGahee eventually seized the bottle; a subsequent field test indicated that the bottle contained methamphetamine. Deputy McGahee testified that he had 18 years of law-enforcement experience at the time of the suppression hearing. According to Deputy McGahee, people often keep contraband in pill bottles.
Following Deputy McGahee's testimony, the circuit court granted Cheatwood's motion to suppress evidence of the methamphetamine. The court stated:
"At this time, it is going to be the Court's order that based upon the testimony -- my understanding of the Terry v. Ohio [, 392 U.S. 1 (1968),] and that analysis, that the right to engage an individual having probable cause for arrest is separate and distinct from the right to conduct a frisk or pat-down. It is my understanding that it is whether there is reason to believe that the officer did believe he was armed and a dangerous individual regardless of whether he has probable cause to make an arrest or charge an offense, that a frisk comes in to play. The officer must have particular facts in which he believes or could infer that the individual is armed and dangerous. I do not find from the testimony of the officer that he gave any testimony that would support a reasonable belief that Mr. Cheatwood was armed and dangerous. It is my understanding that the contraband was noted or discovered as a result of the frisk. Therefore, based on the testimony, I'm going to suppress the evidence."
(R. 12-13.)
On appeal, the State contends that the circuit court erred by granting Cheatwood's motion to suppress. Specifically, the State argues that, based on the totality of the circumstances, Deputy McGahee had reasonable suspicion of illegal conduct to perform a "stop and frisk" pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Cheatwood argues that the circuit court's ruling should be affirmed on the basis that the patdown was not supported by reasonable suspicion and argues further that, even if it was, the circuit court's ruling is due to be affirmed on the alternative ground that the patdown "exceeded the narrowly drawn scope of a Terry search." (Cheatwood's brief, p. 10.); see Washington v. State, 922 So.2d 145, 169 n.9 (Ala. Crim. App. 2005) ("If a trial court's ruling on a motion to suppress is correct for any reason, it will be affirmed by this Court.").
In State v. Landrum, 18 So.3d 424 (Ala. Crim. App. 2009), this Court explained:
" 'This Court reviews de novo a circuit court's decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala. 1996) ; State v. Otwell, 733 So.2d 950, 952 (Ala. Crim. App. 1999).' State v. Skaggs, 903 So.2d 180, 181 (Ala. Crim. App. 2004). In State v. Hill, 690 So.2d 1201 (Ala. 1996), the trial court granted a motion to suppress following a hearing at which it heard only the testimony of one police officer. Regarding the applicable standard of review, the Alabama Supreme Court stated, in pertinent part, as follows:
" ' "Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on *885 the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts." Stiles v. Brown, 380 So.2d 792, 794 (Ala. 1980) (citations omitted). The trial judge's ruling in this case was based upon his interpretation of the term "reasonable suspicion" as applied to an undisputed set of facts; the proper interpretation is a question of law.'
" State v. Hill, 690 So.2d at 1203-04." State v. Landrum, 18 So.3d at 426. Here, Deputy McGahee was the sole witness to testify at the suppression hearing, and his testimony was undisputed. Therefore, the only issue before this Court is whether the circuit court correctly applied the law to the facts set forth in Deputy McGahee's testimony, and we afford no presumption in favor of the circuit court's ruling.
" ' "Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), law enforcement officers may conduct investigatory stops of persons or vehicles if they have a 'reasonable suspicion that criminal activity has occurred, is occurring, or is about to occur...' " ' [State v.]Davis, 7 So.3d [468] at 470 [ (Ala. Crim. App. 2008) ], quoting Wilsher v. State, 611 So.2d 1175, 1179-80 (Ala. Crim. App. 1992) (internal citations omitted). When an officer stops a suspect pursuant to Terry, the officer ' " ' "is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." [Terry,] 392 U.S. at 30, 88 S.Ct. 1868.' " ' Smith v. State, 884 So.2d 3, 9 (Ala. Crim. App. 2003), quoting Riddlesprigger v. State, 803 So.2d 579, 582 (Ala. Crim. App. 2001). In State v. Hails, 814 So.2d 980 (Ala. Crim. App. 2000), this Court explained the standards by which any Terry search would be judged:
" ' "Police may conduct a patdown search without a warrant if, under the totality of the circumstances, the officer has an articulable, reasonable suspicion that a person is involved in criminal activity and that he is armed. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reasonableness of the search is measured objectively. If a reasonably prudent person would believe that his safety, or the safety of others, is endangered, he may conduct a limited search of outer clothing to discover any weapons. Id. at 27, 88 S.Ct. 1868."
" ' United States v. Raymond, 152 F.3d 309, 312 (4th Cir. 1998). "And in determining whether the officer acted reasonably in such circumstances, due weight must be given ... to the specific reasonable inference which he is entitled to draw from the facts in light of his experience." Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).'
" 814 So.2d at 986."
B.A.H. v. State, 28 So.3d 29, 31-32 (Ala. Crim. App. 2009).
Here, Deputy McGahee articulated a reasonable suspicion of criminal activity that warranted a Terry frisk. Even before he first encountered Cheatwood, Deputy McGahee knew that Cheatwood's condition necessitated a welfare check. Upon arriving at the Dollar General store, Deputy McGahee confirmed Cheatwood's condition when he found him passed out in his vehicle. Deputy McGahee's subsequent observations bolstered a reasonable suspicion that criminal activity was afoot. He smelled alcohol emanating from Cheatwood's vehicle and observed an open container of alcohol in the center console of *886 Cheatwood's car. When Deputy McGahee approached Cheatwood, Cheatwood admitted that he had consumed alcohol. See Hall v. State, 897 So.2d 410, 413 (Ala. Crim. App. 2003) (holding that a Terry frisk was supported by reasonable suspicion where the suspect was driving without headlights and had consumed beer). These factors prompted Deputy McGahee to order Cheatwood out of his vehicle and to conduct a patdown search for weapons before investigating his behavior. See Michigan v. Long, 463 U.S. 1032, 1047, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) ("[I]nvestigative detentions involving suspects in vehicles are especially fraught with danger to police officers."). Although Officer McGahee never "artfully stated his reasons for performing the patdown," he made it clear that he acted with the purpose of officer safety. State v. Bailey, 49 So.3d 1245, 1250 (Ala. Crim. App. 2010) ; see Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) ("The State's proffered justification-the safety of the officer-is both legitimate and weighty."); Terry v. Ohio, 392 U.S. at 23, 88 S.Ct. 1868 ("Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties."). These facts, in conjunction with Deputy McGahee's 18 years of experience in law enforcement, gave rise to a reasonable suspicion that criminal activity had occurred, was occurring, or was about to occur. See B.A.H. v. State, supra. Indeed, it would have been unreasonable to require Deputy McGahee to take unnecessary risks associated with an intoxicated individual passed out in a public parking lot. Because Deputy McGahee articulated a particularized basis for a reasonable suspicion justifying the patdown search, the circuit court's ruling on Cheatwood's motion to suppress is due to be reversed.
Moreover, we are not persuaded to affirm the circuit court's ruling on the basis that seizure of the pill bottle exceeded the scope of a Terry frisk, as Cheatwood suggests on appeal. Although we note that "a Terry patdown must be strictly 'limited to that which is necessary for the discovery of weapons,' " an officer can lawfully seize other incriminating evidence observed in plain-view in the course of such a patdown. Allen v. State, 689 So.2d 212, 213 (Ala. Crim. App. 1995) (quoting Terry v. Ohio, 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908 ); see Bragg v. State, 536 So.2d 965, 969 (Ala. Crim. App. 1988). In Poole v. State, 596 So.2d 632, 636 (Ala. Crim. App. 1992), this Court set forth the elements of the plain-view exception:
"[F]our conditions must be satisfied before an object may be seized without a warrant under the plain view exception to the warrant requirement: (1) the object must be in plain view; (2) the viewing officer can not have violated the Fourth Amendment in arriving at the place from which the evidence is observed (the observation is from a place where the officer had a right to be); (3) the incriminating character of the evidence must be immediately apparent; and (4) the officer must have a lawful right of access to the object itself."
Poole v. State, 596 So.2d at 636. In this case, the first, second, and fourth conditions were clearly established. As discussed above, Deputy McGahee saw the pill bottle protruding from Cheatwood's back pocket during a lawful Terry frisk, and therefore he did not "violate[ ] the Fourth Amendment in arriving at the place from which the evidence [was] observed." Id., at 636. Deputy McGahee likewise had a lawful right of access to the pill bottle because the events of this case transpired in a parking lot open to the public. The only remaining question is whether *887 the incriminating character of the pill bottle was immediately apparent to Deputy McGahee. In Nix v. State, 136 So.3d 1101 (Ala. Crim. App. 2013), this Court stated:
"'[T]he requirement for a warrantless search that the officer immediately recognize the object as evidence of wrongdoing requires that the officer's judgment be grounded in probable cause. However, the officer need not be convinced beyond a reasonable doubt as to the incriminating nature of the evidence discovered, and it is sufficient if the evidence raises the probability that criminal activity is afoot.' Wedgeworth v. State, 610 So.2d 1244, 1248 (Ala. Crim. App. 1992)."
Nix v. State, 136 So.3d at 1105. See also McElroy v. State, 469 So.2d 1337, 1340 (Ala. Crim. App. 1985) ("[T]he Supreme] Court declared the ... phrase 'immediately apparent' an 'unhappy choice of words,' for it 'can be taken to imply that an unduly high degree of certainty as to the incriminatory character of the evidence is necessary for an application of the "plain view" doctrine.' " (quoting Texas v. Brown, 460 U.S. 730, 741, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) ) ). In Poole v. State, supra, this Court discussed probable cause in determining whether evidence was "immediately apparent" under the plain-view doctrine:
"Probable cause 'merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" that certain items may be contraband ... or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.' Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (citations omitted)."
Poole v. State, 596 So.2d at 639. See also King v. State, 521 So.2d 1042, 1047 (Ala. Crim. App. 1987) (quoting W. LaFave, Search and Seizure § 6.7(a) (2d ed. 1987) (" 'The plain view exception would be worthless if officers had to be "absolutely certain" that what they saw was seizable.' ") ); Allen v. State, 689 So.2d 212, 216 (Ala. Crim. App. 1995) ("The facts giving rise to probable cause must be viewed in the light of the officer's own experience and training.").
Here, Deputy McGahee found Cheatwood asleep in his car with an open container of alcohol in the center console. Deputy McGahee smelled alcohol, and Cheatwood admitted that he had been drinking alcohol. Under these circumstances and in light of Deputy McGahee's 18 years of law-enforcement experience, there was a reasonable probability that the pill bottle Deputy McGahee saw protruding from Cheatwood's pocket contained contraband. Indeed, Deputy McGahee testified that he often discovered illegal drugs being carried in such a manner. See Nix v. State, 136 So.3d at 1106 ("[P]robable cause existed to search defendant where arresting officer saw 'exposed portion of the plastic bag in her pocket; he knew from his experience as a narcotics investigator ... that narcotics are commonly packaged in plastic bags; and he knew that [the defendant's husband] had just been arrested.' " (quoting People v. Harris, 62 Cal. 2d 681, 683, 43 Cal.Rptr. 833, 401 P.2d 225 (1965) ) ). It is immaterial that Deputy McGahee was not absolutely certain that the pill bottle contained contraband. See King v. State, supra ; see also Herrin v. State, 349 So.2d 103, 109 (Ala. Crim. App. 1977) ("[T]he plain view doctrine justified the seizure of pill bottles containing capsules, found on the dash-board of an automobile ... even though[ ] it was not determined until after later tests that the pills contained ... illegal drugs."). The surrounding *888 circumstances, namely, the fact that Cheatwood smelled of alcohol, that he admitted to drinking alcohol, and that he was passed out in a public place, gave rise to a "practical, nontechnical" probability that the unlabeled pill bottle he carried contained contraband. Poole v. State, 596 So.2d at 639. Therefore, the pill bottle was in plain view and was properly seized under the facts and circumstances of this case.
Based on the foregoing, we reverse the order of the circuit court and remand this case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Windom, P.J., and Welch, Burke, and Joiner, JJ., concur.

Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).